**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>              Plaintiff,<br>     v.<br><br>BARBRA ALEXANDER, BETH PINA, MICHAEL E. SWANSON, AND APS FUNDING, INC.,<br><br>              Defendants. | Case No.: 10-CV-04535-LHK<br><br>ORDER GRANTING DEFENDANT'S MOTION TO STAY ANSWER AND DISCOVERY |

Defendant Michael Swanson is the subject of the instant civil enforcement action by the Securities and Exchange Commission ("SEC") and a parallel criminal proceeding for his role in an alleged scheme to defraud investors in two funds managed by APS Funding, Inc. Swanson now moves to stay his Answer and all discovery in the civil proceeding pending resolution of the criminal case. The Court heard oral argument on December 21, 2010. Having carefully considered the parties' arguments and the relevant legal authority, the Court GRANTS Defendant's motion to stay his Answer and all discovery, subject to case-by-case exceptions for discovery from third-party investor witnesses where good cause is shown.

**I. Background**

On October 6, 2010, the United States Attorney's Office filed an indictment charging Defendants Barbra Alexander, Beth Piña, and Michael Swanson with of a total of forty-three

1
Case No.: 10-CV-04535-LHK
ORDER GRANTING DEFENDANT'S MOTION TO STAY ANSWER AND DISCOVERY

counts of conspiracy to commit mail and wire fraud, 18 U.S.C. § 1349; mail fraud, 18 U.S.C. § 1341; wire fraud, § 1343; securities fraud, 15 U.S.C. §§ 78j(b), 78ff; 17 C.F.R. §§ 240.10b-5, 240.10b5-2; 18 U.S.C. § 2; and money laundering, 18 U.S.C. § 1957(a).[1]  Indictment ("Indict."), *United States v. Alexander*, No. 10-CR-00730 (N.D. Cal. Oct. 6, 2010).  On October 7, 2010, Defendants Swanson and Alexander made their initial appearance in the criminal case, and the indictment was unsealed.[2]  Minute Entry, *United States v. Alexander*, No. 10-CR-00730 (N.D. Cal. Oct. 7, 2010), ECF Nos. 4, 5.  Also on October 7, 2010, the SEC filed the civil complaint in this case against Defendants Alexander, Piña, and Swanson, as well as APS Funding, Inc.  Compl., ECF No. 1.  The civil complaint asserts claims for violations of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77e(a), 77e(c), 77q(a); the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b); and regulations thereunder, 17 C.F.R. § 240.10b-5.

In the civil case, the SEC alleges that from 2006 to 2009, Defendants Alexander, Piña, and Swanson misappropriated approximately $2.5 million of funds raised from investors through the fraudulent sale of interests in two real estate investment funds.  Compl. ¶ 1.  According to the Complaint, from November 2006 to February 2008, Alexander and Piña were principals of A&P Properties, Inc., the predecessor to APS funding.  Compl. ¶ 13.  Swanson provided consulting services to Alexander, Piña, and A&P Properties during this time.  Compl. ¶ 12.  In February 2008, A&P Properties was renamed APS Funding,[3] with Alexander serving as President, Swanson as Vice President, and Piña as Secretary/Chief Financial Officer of the corporation.  Compl. ¶¶ 10-13.  APS managed two funds, the GCF Investment Fund and the Greenlight Fund.  Compl. ¶¶ 14-16.  Both funds were created to raise capital to be used for short-term financing.  Compl. ¶¶ 14, 16.

---

[1] The Court takes judicial notice of public filings in the related criminal case, as they are directly related to Defendant's motion to stay the civil proceeding.  *See Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007) (noting that a federal court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue").  The Court takes judicial notice only of the existence of these filings, and not the truth of any facts or allegations included therein.

[2] Defendant Piña made her initial appearance in the criminal case on October 14, 2010.  Minute Entry, *United States v. Alexander*, No. 10-CR-00730 (N.D. Cal. Oct. 14, 2010), ECF No. 20.

[3] It appears that APS Funding is the successor to A&P Properties.  For convenience, the Court will refer to both entities as simply APS Funding, as does the Complaint in this case.

1   Investors were told that they would receive a 12 percent annual return on their investment and that
2   the loans made by the funds would typically be secured by real property. Compl. ¶¶ 17, 20. The
3   funds' offering documents stated that Alexander, Piña, and Swanson would not receive fees or
4   other compensation, but instead would receive any money that remained after the investors were
5   paid 12 percent annual returns on their investments. Compl. ¶ 20.

6   The SEC alleges that Defendants did not use the investors' funds as promised, but instead
7   diverted approximately $2.5 million for use in other business ventures and in unsecured "loans"
8   (which were not paid back) to Alexander, Swanson, and Piña. Compl. ¶¶ 22-26. As to the
9   remaining $4.2 million investors paid into the funds, the SEC alleges that the few legitimate loans
10  made with investors' money did not generate sufficient returns to pay investors the 12 percent
11  annual returns promised. Compl. ¶ 28. Defendants allegedly hid this fact from investors by
12  falsifying account statements and falsely representing that monthly interest payments and checks
13  reflected gains from the investments, when in fact they were paid in large part from money
14  contributed by new investors. Compl. ¶ 27-28. The SEC claims that investors have suffered
15  severe economic harm as a result of Defendants' fraudulent scheme. Compl. ¶¶ 32-35.

16  The allegations in the criminal indictment are substantially similar to those in the civil
17  complaint, and on November 23, 2010, Judge Jeremy Fogel, presiding over the criminal case,
18  issued an order finding the criminal and civil cases related under Criminal Local Rule 8-1(b).[4] At
19  this time, all defendants have appeared and secured counsel in the criminal case. In the instant
20  civil proceeding, only counsel for Defendant Swanson has entered an appearance, and no
21  responsive pleadings have been filed. Swanson now seeks to stay his Answer and all discovery in
22  this case pending resolution of the criminal proceeding. Counsel for Defendant Piña specially
23  appeared at the hearing in support of Swanson's motion to stay.

---

[4] Criminal Local Rule 8-1(b) states that a criminal case is related to another civil or criminal case if "(1) Both actions concern one or more of the same defendants and the same alleged events, occurrences, transactions or property; or (2) Both actions appear likely to entail substantial duplication of labor if heard by different Judges or might create conflicts and unnecessary expenses if conducted before different Judges."

3

Case No.: 10-CV-04535-LHK
ORDER GRANTING DEFENDANT'S MOTION TO STAY ANSWER AND DISCOVERY

## II. Analysis

The Constitution does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings. *Federal Sav. & Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 902 (9th Cir. 1989). "In the absence of substantial prejudice to the rights of the parties involved, such parallel proceedings are unobjectionable under our jurisprudence." *Securities and Exchange Commission v. Dresser Industries, Inc.*, 628 F.2d 1368, 1374 (D.C. Cir. 1980). Nonetheless, a court may exercise its discretion to stay civil proceedings when the interests of justice seem to require such action. *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995).

"A court must decide whether to stay civil proceedings in the face of parallel criminal proceedings in light of the particular circumstances and competing interests involved in the case." *Molinaro*, 889 F.2d at 902. In determining whether to stay civil proceedings, a court must first consider "the extent to which the defendant's fifth amendment rights are implicated." *Keating*, 45 F.3d at 324 (quoting *Molinaro*, 889 F.2d at 902). In addition, the court should generally consider the following five factors: "(1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation." *Keating*, 45 F.3d at 325. Accordingly, the Court will first consider the extent to which Swanson's Fifth Amendment rights are implicated and then turn to the remaining *Keating* factors.

### A. Implication of Swanson's Fifth Amendment Privilege

"A defendant has no absolute right not to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege." *Keating*, 45 F.3d at 326. Thus, while the extent to which a defendant's Fifth Amendment rights are implicated is a "significant factor" to be considered, it is "only one consideration to be weighed against others." *Id.* Nonetheless, other than cases involving bad faith or malice on the part of the government, "the strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under

4

indictment for a serious offense is required to defend a civil or administrative action involving the same matter." *Dresser*, 628 F.2d at 1375-76. In such cases, allowing the civil action to proceed may undermine the defendant's Fifth Amendment privilege, expand criminal discovery beyond the limits of Federal Rule of Criminal Procedure 16(b), expose the defense strategy to the prosecution before the criminal trial, or cause other prejudice. *Id.* at 1376. Accordingly, where the civil proceeding wholly or substantially overlaps with the criminal proceeding, a court may be justified in staying the civil case, deferring civil discovery, or taking other protective measures. *Id.*

In this case, Swanson's Fifth Amendment concerns are substantial. The individual defendants in the civil proceeding have been indicted on serious criminal charges, and criminal proceedings have commenced in a related case, *United States v. Alexander, et al.*, No. 10-cr-00730, in this District. *Compare Molinaro*, 889 F.2d at 903 ("The case for staying civil proceedings is a far weaker one when no indictment has been returned, and no Fifth Amendment privilege is threatened.") (internal quotation marks and citation omitted). Moreover, the SEC's allegations in its civil complaint overlap significantly, if not entirely, with the criminal charges. Both cases rest upon claims that Defendants, including Swanson, engaged in a scheme to defraud investors in APS Funding's GCF Investment and Greenlight Funds, made materially false representations, and misappropriated investor assets for personal benefit. Compl. ¶¶ 1, 5; Indict. ¶ 26. More specifically, both the civil and criminal cases allege that Swanson, Alexander, and Piña secured around $7 million from investors in the GCF Investment and Greenlight Funds, Compl. ¶ 19; Indict. ¶ 27; represented that this money would be used to make short-term loans secured by real property, Compl. ¶ 20; Indict. ¶ 12; instead diverted substantial amounts for their personal use, Compl. ¶¶ 22-26; Indict. ¶¶ 22, 26; and falsified account statements in order to conceal the fraudulent scheme and to encourage further investment, Compl. ¶¶ 27-29; Indict. ¶¶ 23, 26. The factual allegations in the two cases are substantially the same, and the SEC concedes that it expects Swanson to assert his Fifth Amendment privilege in response to any discovery. Thus, Swanson's Fifth Amendment concerns are significant, and this factor of the analysis strongly supports a stay.

### B. Other *Keating* Factors

Plaintiff appears to concede that Swanson's Fifth Amendment rights are implicated by the civil proceeding and may justify a stay of some discovery in this matter. Indeed, at oral argument, the SEC stated that it would stipulate to a stay of all discovery, except initial disclosures, as to Swanson and the other Defendants. The SEC further argues that at least as to third-party witnesses, Swanson's interest in staying discovery is outweighed by the other *Keating* factors, which favor allowing the case to proceed. As discussed below, the Court agrees that Plaintiff and the public have an interest in proceeding expeditiously with the civil action. Nonetheless, the Court finds that, on balance, the *Keating* factors support a stay and that any prejudice to Plaintiff can be addressed by permitting discovery from non-party investor witnesses on a case-by-case basis.

#### 1. Plaintiff's Interest in Proceeding Expeditiously

Plaintiff argues that it has a strong interest in proceeding expeditiously with this litigation, in order to protect investors and promptly obtain injunctive and monetary relief. Pl.'s Opp'n 4. Certainly, as the agency responsible for enforcement of the securities laws, the SEC must be able to respond quickly to securities violations and seek prompt judicial redress. *Dresser*, 628 F.2d at 1377. In this case, however, it appears unlikely that the alleged violations will continue if the case is stayed. The individual defendants have resigned from their positions at APS and no longer have access or control over APS assets, funds, or records. Decl. of Danna Paje in Supp. of Pl. Michael E. Swanson's Reply Br. to Mot. to Stay ("Paje Decl.") ¶ 5-6. Since July 26, 2010, David Shriner has acted as the President and sole Officer and Director of APS. Paje Decl. ¶ 4. Mr. Shriner has agreed to work with Donald P. Hateley, attorney and CPA, in order to identify company assets, commence collection efforts on delinquent loans, maximize the investors' capital accounts, and make recommendations to investors going forward. Def.'s Reply 3. Although Mr. Shriner is not an appointed receiver, the SEC stated at the motion hearing that it has been in contact with him in attempts to ensure that he manages APS in the interest of investors. It thus appears that Mr. Shriner's management of APS will assist in preserving APS assets and in remedying,ced to the extent possible, investor losses. Accordingly, while a stay would likely delay the relief the SEC seeks, it does not appear that a stay would prevent the SEC from protecting investors from ongoing harm.

The SEC also argues that it has a particular interest in proceeding with third-party witnesses, including investors. A stay, it argues, would increase the odds that key witnesses may become unavailable, that their memories will fade, and that documents in their possession may be lost. Pl.'s Opp'n 4. The Court agrees that the delay associated with a stay may affect the availability of witnesses and documents or the quality of testimony. *See Dresser*, 628 F.2d at 1377 ("If Justice moves too slowly . . . witnesses may die or move away, memories may fade . . . ."). Fading memories are a particular concern in this case, as the SEC alleges that fraudulent statements were made as early as 2006 and were made orally, without any written record. To some extent, the SEC's concerns are mitigated by the fact that the criminal prosecution is already underway, and key witnesses in the civil case are also likely to provide testimony or documents in the criminal proceeding. The active criminal case may help keep witnesses' memories fresh, preserve the testimony of witnesses who later become unavailable, and ensure the retention of important evidence and documents. *See McCormick v. Rexroth*, No. C 09-4188, 2010 WL 934242, at *3 (N.D. Cal. Mar. 15, 2010) ("[T]he fact that the witnesses for the two proceedings are likely to include many of the same people providing much of the same testimony should reduce the danger that any testimony will be lost as a result of the stay."). Moreover, it appears that federal agents have already confiscated approximately 60 boxes of documents and evidence from APS headquarters and Mr. Swanson's home, suggesting that much of the critical evidence may already be in the Government's possession. Def.'s Reply 6; Paje Decl. ¶ 3. Thus, the Court does not believe that concerns about loss of evidence and testimony tip the overall analysis in Plaintiff's favor. As discussed in more detail below, however, if there are specific witnesses whose poor health, fading memories, or other circumstances justify more immediate discovery, the Court can avoid prejudice to Plaintiff by permitting discovery from these witnesses on a case-by-case basis.

### 2. Burden on Defendant

As discussed above, this civil proceeding implicates Defendant's Fifth Amendment rights to a significant degree, and allowing the civil case to proceed in parallel with the criminal prosecution would effectively force Swanson to choose between defending himself in the civil case and preserving his Fifth Amendment rights. In addition to this burden, Defendant argues that even

7

if he invokes his Fifth Amendment privilege in this proceeding, discovery as to non-party witnesses would prejudice him in at least two ways. First, in using discovery to mount his defense in the civil case, Swanson will be forced to expose the basis of his defense to the criminal charges. Second, permitting the SEC to engage in broad civil discovery would unfairly expand the scope of criminal discovery beyond the limits of Federal Rule of Criminal Procedure 16(b). These are both well-recognized consequences of parallel criminal and civil proceedings that may support a stay or deferral of discovery in cases where delay would not seriously injure the public interest or otherwise cause prejudice.[5] *See Dresser*, 628 F.2d at 1376. Moreover, at oral argument, the SEC confirmed that it anticipates sharing information with the U.S. Attorney's Office, to the extent allowed by the criminal laws, as the parallel cases proceed. The Court therefore finds that permitting discovery to proceed, even as to third parties, could seriously burden Defendant and prejudice his criminal defense.

### 3. Judicial Efficiency

The third *Keating* factor considers "the convenience of the court in the management of its cases, and the efficient use of judicial resources." *Keating*, 45 F.3d at 325. Plaintiff argues that this factor weighs against a stay because permitting discovery to go forward would enable the case to proceed promptly to trial. To be sure, expeditious resolution of cases is, as a general matter, preferable to delay of the Court's docket. On the other hand, a number of courts have concluded that staying a parallel civil proceeding in its early stages may prove more efficient in the long-run. Allowing the criminal action to proceed first may narrow the issues and streamline discovery in the civil proceeding, *Douglas v. United States*, Nos. C 03-04518, C 04-05357, 2006 WL 2038375, at *5 (N.D. Cal. 2006), and collateral estoppel based on findings in the criminal case may expedite resolution of the civil case. *S.E.C. v. Nicholas*, 569 F. Supp. 2d 1065, 1070 (C.D. Cal. 2008). A stay will also allow civil discovery to "proceed unobstructed by concerns regarding self-incrimination." *Jones v. Conte*, No. C 045312SI, 2005 WL 1287017, at *2 (N.D. Cal. Apr. 19,

---

[5] Indeed, it is not uncommon for the United States Attorney's Office to intervene in a civil enforcement proceeding and move for a stay of the civil action in order to prevent the defendant from using civil discovery to circumvent the limits on criminal discovery. *See, e.g.*, *S.E.C. v. Fraser*, No. CV-09-00443, 2009 WL 1531854, at *2 (D. Ariz. June 1, 2009); *S.E.C. v. Nicholas*, 569 F. Supp. 2d 1065, 1071-72 (C.D. Cal. 2008); *see also Dresser*, 628 F.2d at 1376 n.20.

8
Case No.: 10-CV-04535-LHK
ORDER GRANTING DEFENDANT'S MOTION TO STAY ANSWER AND DISCOVERY

2005) (quotation marks and citation omitted).  Thus, while it is generally preferable to avoid delay, in this case, where no answer has been filed and several defendants have not yet appeared, a stay may prove the more efficient course.  *See Taylor, Bean & Whitaker Mortg. Corp. v. Triduanum Financial, Inc.*, No. CIV. 2:09-cv-0954, 2009 WL 2136986, at *4 (E.D. Cal. July 15, 2009) (finding that a stay would make efficient use of judicial resources where "[n]o answer has been filed, no scheduling order has been issued, and no dispositive motions have been filed").

### 4. Interests of Non-Parties

Plaintiff further argues that the interests of non-party investors who were harmed by Defendants' alleged fraud favor permitting the case to move forward expeditiously.  Plaintiff points out that if the SEC obtains monetary relief against Defendants, it may be able to provide defrauded investors with a partial recovery of their losses.  Pl.'s Opp'n 4.  The Court agrees that the interests of non-party investors in obtaining prompt monetary relief is strong.  Nonetheless, it appears that the regulatory and criminal investigations have already prompted Defendants to take some remedial action, through the appointment of Mr. Shriner, to minimize the harm to investors and maximize the possibility that investors will recover some of their investments.  Def.'s Reply 3.  In addition, while staying the civil case would certainly delay any recovery by the SEC that might be passed along to investors, the SEC has not argued that a stay would diminish the likelihood of an eventual recovery.   Moreover, even if the civil case is delayed, there remains a possibility that investors may obtain prompt restitution through the criminal proceeding.  *See* 18 U.S.C. §§ 3663, 3663A; *U.S. v. Hickey*, 580 F.3d 922, 932 (9th Cir. 2009) (affirming sentencing order requiring defendants convicted of mail fraud and securities fraud to pay $17,454,581 in restitution to fund investors).  Thus, although the Court agrees that investors have a significant interest in timely litigation of the civil proceedings, it is not convinced that this interest outweighs the burdens on Swanson.

### 5. Interests of the Public

Finally, Plaintiff argues that there is a strong public interest in proceeding with the civil case because prompt resolution of SEC enforcement actions promotes public confidence in securities markets.  Pl.'s Opp'n 5.  The Court agrees that the public interest in expeditious civil

9

litigation is stronger here, where the Plaintiff is a federal agency entrusted with protecting investors, than in a case between private parties. The public has "a vital interest in the integrity of public markets," *Nicholas*, 569 F. Supp. 2d at 1072, and the Ninth Circuit has recognized that delay of enforcement proceedings may be detrimental to public confidence in an agency's enforcement scheme. *Keating*, 45 F.3d at 326. On the other hand, where a criminal case on the same matter is already underway, some courts have reasoned that the *criminal* case is of primary importance to the public, and that the public's strongest interest is in ensuring the integrity of the criminal proceeding. *See, e.g.*, *Nicholas*, 569 F. Supp. 2d at 1072; *McCormick*, 2010 WL 934242, at *3. In comparison, "the civil case, which carries only civil sanctions and monetary penalties, is not of an equally pressing nature." *Nicholas*, 569 F. Supp. 2d at 1072. In the instant case, the SEC's investigations have already led to the indictment of three individuals on serious criminal charges and caused the defendants to give up all control over investors' assets and the activities of APS Funding. Thus, although the public surely has some interest in the speedy resolution of the enforcement action, the Court does not believe that a stay will undermine the public's confidence in the SEC or the integrity of securities markets. In this case, therefore, it is the public's interest in fair criminal proceedings that takes precedence.

### C. The Balance of Interests and Scope of the Stay

Based on the above analysis, the Court finds that a stay is warranted under the particular circumstances of the parallel criminal and civil proceedings against Defendant Swanson. This case presents what has been described as one of the strongest cases for granting a stay: "where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter." *Dresser*, 628 F.2d 1368, 1375-76 (D.C. Cir. 1980). Although the Court recognizes that Plaintiff, non-party investors, and the public have an interest in expeditious resolution of the civil proceedings, the Court finds that those interests are unlikely to be seriously prejudiced by a stay. The SEC and criminal investigations have already alleviated concerns that investors might be further harmed by any fraud perpetrated by defendants; the public interest is largely served by the parallel criminal proceeding; and the significant overlap between the civil and criminal proceedings mitigates concerns that evidence might become unavailable while the case is

10

stayed. In contrast, the burden on Swanson is serious and not easily avoided. His Fifth Amendment rights appear to be implicated by nearly every aspect of the civil proceeding. If the civil case proceeds, he will be forced to choose between preserving his privilege against self-incrimination, thereby subjecting himself to a one-sided discovery process and adverse inferences drawn from his invocation of the Fifth Amendment, and waiving the privilege in order to mount a vigorous defense in the civil case. In addition, even if he invokes the privilege, the discovery he seeks from third-party witnesses may expose the basis of his criminal defense. Weighing these interests and burdens, the Court concludes that delaying the civil case will not seriously injure the public interest and would alleviate a severe burden on Swanson's rights and ability to defend himself in both proceedings. Accordingly, the Court finds that a stay is warranted.

Nonetheless, the Court recognizes that the SEC is particularly concerned about obtaining information from third-party witnesses. Considering that the SEC's allegations reach conduct dating back to 2006 and encompass unrecorded, oral representations, the Court agrees that there may be certain witnesses, particularly the elderly or those with serious health problems, whose depositions need to be taken sooner rather than later. Therefore, as discussed at oral argument, the Court will permit discovery to go forward as to third-party investor witnesses on a case-by-case basis, either by stipulation of the parties or upon a showing by the SEC that good cause exists to make an exception to the stay. Barring changed circumstances, however, the Court will not permit discovery as to non-party employees of APS Funding. Though not currently named in the criminal action, it is plausible that APS employees will invoke their Fifth Amendment privilege, thus complicating the discovery process and raising further Fifth Amendment concerns. In addition, because these employees likely have knowledge of the inner workings of APS Funding and Defendants' actions, there is a greater risk that Swanson's discovery approach to these witnesses may expose the basis of his criminal defense or otherwise prejudice him in the criminal action.

The Court therefore GRANTS Swanson's motion to stay all discovery, including the Answers and initial disclosures of all Defendants, subject to case-by-case exceptions for third-party investor witnesses where good cause is shown to allow discovery to proceed. *See Nicholas*, 569 F.

Supp. 2d at 1073 n.9 (staying case *sua sponte* as to two defendants not involved in the motion to stay).

### III. Conclusion

For the reasons discussed above, Defendant's motion to stay his Answer and all discovery in the instant civil enforcement proceeding is GRANTED. By January 21, 2011, the parties shall file a declaration in which they (1) stipulate to any third-party investor witnesses who should be exempted from the stay, and (2) for disputed witnesses, provide detailed reasons why each side supports and opposes an exception to the stay. In addition, any party may move to lift the stay within fifteen days after criminal proceedings are terminated, or if a significant change of circumstances otherwise warrants lifting the stay in full or in part.

The stay of discovery does not relieve Defendants of their obligation to appear in this case. Plaintiff shall serve this Order on Defendants Alexander, Piña, and APS Funding, and Defendants are ordered to enter an appearance no later than January 10, 2011.

**IT IS SO ORDERED.**

Dated: December 22, 2010

_____
LUCY H. KOH
United States District Judge