1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

SAN JOSE DIVISION

11

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>              Plaintiff,<br><br>    v.<br><br>BARBRA ALEXANDER, et al.,<br>              Defendants. | Case No.10-CV-04535-LHK<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

18

       Before the Court is Plaintiff Securities and Exchange Commission's ("Plaintiff") motion

19

for summary judgment against Barbra Alexander and Michael E. Swanson (collectively,

20

"Defendants"). ECF No. 65, ("Mot.").[1] Defendants have not filed an opposition. Having

21

considered Plaintiff's motion, the relevant law, and the record in this case, the Court hereby

22

GRANTS in part and DENIES in part Plaintiff's motion for summary judgment.

23

**I.      BACKGROUND**

24

       In the instant case, Plaintiff alleges that from 2006 to 2009, Defendants Barbra Alexander,

25

26

27

---

[1] Unless otherwise noted, all references to the docket refer to the instant civil action, 10-CV-4535-LHK.

1

28

Michael Swanson, and Beth Piña[2] misappropriated millions of dollars raised from investors through the fraudulent sale of interests in two real estate investment funds. Compl. ¶ 1. According to the complaint, from November 2006 to February 2008, Alexander and Piña were principals of A&P Properties, Inc., the predecessor to APS Funding, Inc. *Id.* ¶ 13. Swanson provided consulting services to Alexander, Piña, and A&P Properties during this time. *Id.* ¶ 12. In February 2008, A&P Properties was renamed APS Funding, with Alexander serving as President, Swanson as Vice President, and Piña as Secretary/Chief Financial Officer of the corporation. *Id.* ¶¶ 10–13. APS managed two funds, the GCF Investment Fund and the Greenlight Fund. *Id.* ¶¶ 14–16. Both funds were created to raise capital to be used for short-term financing. *Id.* ¶¶ 14, 16.

More specifically, the GCF Investment Fund and the Greenlight Fund purported to make "short-term, fixed rate loans typically used for property acquisitions, enhancements, improvements, and new construction." *United States v. Alexander*, No. 10-CR-00730-LHK; *United States v. Swanson*, No. 10-CR-00730-LHK, Ex. 8 at 4, 11. Defendants solicited investors from inside and outside of California. *See* ECF No. 229, 97:13–98:2 (10-CR-00730-LHK). To encourage investors to invest with the funds, Defendants represented to investors that the annual rate of return would amount to 12%. *See* ECF No. 228, 221:12–222:22 (10-CR-00730-LHK). Defendants also represented that the loans made by the funds would be secured by deeds of trust, and that "[a]ll of the Offering Proceeds will be used for investment in the Company to fund the pool that will be used for various loans that the Company makes to its clients and customers." ECF 67-2 at 25, 27 (GCF Investment Private Placement Memorandum).

From January 2007 to December 2009, Defendants raised approximately $5.4 million from investors, which they used to make payments to investors and for personal benefit. ECF No. 229, 41:14–44 (10-CR-00730-LHK); ECF No. 232, 93:4–95:14 (10-CR-00730-LHK); Exhs. 128, 219(a). In addition to the $5.4 million from investors, Defendants also acquired an additional $1.5

_____

[2] Plaintiff does not move for summary judgment against Piña, as Piña and Plaintiff reached a settlement and stipulated to the entry of a final judgment, which the Court granted on June 15, 2015. ECF No. 82.

2

Case No.10-CV-04535-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

million from borrowers. *See* Exh. 219(a). Defendants sent investors fraudulent statements showing 1% monthly increases in their investments and continued to actively solicit new investments in the funds. ECF No. 228, 124:11-125:17 (10-CR-00730-LHK); ECF No. 230, 128:13–133:10 (10-CR-00730-LHK); Exhs. 19, 20, 21.

On October 6, 2010, a grand jury returned an indictment charging Defendants and Beth Piña with (1) one count of conspiracy to commit mail and wire fraud under 18 U.S.C. § 1349; (2) thirteen counts of mail fraud under 18 U.S.C. § 1341; (3) fourteen counts of wire fraud under 18 U.S.C. § 1341; (4) two counts of securities fraud under 15 U.S.C. § 78j(b) ("Section 10(b)"), 15 U.S.C. § 78ff, 17 C.F.R. §§ 240.10b-5 ("Rule 10b-5"), 17 C.F.R. § 240.10b5-2, and 18 U.S.C. § 2; and (5) thirteen counts of engaging in monetary transactions in property derived from specified unlawful activities under 18 U.S.C. § 1957(a). *See* ECF No. 1 (10-CR-00730-LHK), ("Indictment").

On October 7, 2010, Plaintiff filed a civil complaint against Defendants, Piña, and APS Funding, in the instant civil action. As relevant here, Plaintiff alleges that Defendants violated Section 10(b), 15 U.S.C. § 78ff, Rule 10b-5, 17 C.F.R. § 240.10b5-2, and 15 U.S.C. § 77q(a) ("Section 17(a)"). *See generally* Compl. The complaint also alleges that Defendants, Piña and APS Funding violated 15 U.S.C. §§ 77e(a), (c) ("Section 5") and seeks permanent injunctions under 15 U.S.C. §§ 77t(b), 78u(d), (e); disgorgement with prejudgment interest; and civil penalties with regard to all parties. *See id.*

On November 10, 2010, Defendant Swanson filed a motion to stay his answer to the civil complaint and discovery in the instant action until his criminal trial was resolved. *See* ECF No. 16. Plaintiff filed an opposition on November 30, 2010. *See* ECF No. 20. Defendant Swanson filed a reply on December 8, 2010. *See* ECF No. 23. The Court granted Defendant Swanson's motion on December 22, 2010, staying all discovery including answers and initial disclosures for all Defendants. *See* ECF No. 25, ("Stay Order").

Defendant Swanson's parallel criminal case was resolved on September 3, 2013, following

Case No.10-CV-04535-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

United States District Court
Northern District of California

1   a ten day jury trial. *See* ECF No. 192 (10-CR-00730-LHK). A federal jury found Defendant

2   Swanson guilty of (1) one count of securities fraud under Section 10(b), 15 U.S.C. § 78ff, Rule

3   10b-5, 17 C.F.R. § 240.10b5-2, and 18 U.S.C. § 2; (2) one count of conspiracy to commit mail and

4   wire fraud under 18 U.S.C. § 1349; (3) twelve counts of mail fraud under 18 U.S.C. § 1341; and

5   (4) fourteen counts of wire fraud under 18 U.S.C. § 1341. *See* ECF No. 193 (10-CR-00730-LHK),

6   ("Swanson Verdict"). Defendant Swanson was sentenced to a term of 37 months imprisonment,

7   which consists of 37 month terms on each count of conviction, to be served concurrently. ECF No.

8   378 at 3 (10-CR-00730-LHK), ("Swanson Am. Judgment"). Defendant Swanson was also ordered

9   to pay $2,838,100.36 in restitution. *Id.* at 6.

10       Defendant Alexander's parallel criminal case was resolved on February 21, 2014,

11   following a ten day jury trial. *See* ECF No. 299 (10-CR-00730-LHK). A federal jury found

12   Defendant Alexander guilty of (1) two counts of securities fraud under Section 10(b), 15 U.S.C.

13   § 78ff, Rule 10b-5, 17 C.F.R. § 240.10b5-2, and 18 U.S.C. § 2; (2) one count of conspiracy to

14   commit mail and wire fraud under 18 U.S.C. § 1349; (3) eleven counts of mail fraud under 18

15   U.S.C. § 1341; and (4) fourteen counts of wire fraud under 18 U.S.C. § 1341. *See* ECF No. 300

16   (10-CR-00730-LHK), ("Alexander Verdict"). Defendant Alexander was sentenced to a term of

17   108 months imprisonment, which consists of 108 months on each count of conviction, to be served

18   concurrently. ECF No. 379 at 3 (10-CR-00730-LHK) ("Alexander Am. Judgment"). Defendant

19   Alexander was also ordered to pay $6,305,638.72 in restitution. *Id.* at 6.

20       On July 29, 2014, Plaintiff filed a motion to lift the stay on the instant civil action in light

21   of the resolution of the criminal cases. *See* ECF No. 50. The Court granted Plaintiff's motion to

22   lift the stay on September 25, 2014. *See* ECF No. 52.

23       Plaintiff filed the instant motion for summary judgment on April 30, 2015. *See* Mot.

24   Plaintiff requests summary judgment on its Section 10(b), Rule 10b-5, Section 17(a), and Section

25   5(a) and (c) civil claims with regard to Defendants. *See* Mot. Plaintiff also requests that the Court

26   order permanent injunctions under 15 U.S.C. §§ 77t(b), 78u(d), (e); disgorgement with

27

28
4

Case No.10-CV-04535-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT

1   prejudgment interest; and civil penalties against Defendants. *See id.* Plaintiff also filed a request

2   for judicial notice.[3] On May 27, 2015, after Plaintiff discovered that its attempt to serve copies of

3   the instant motion on Defendants had failed, the Court granted Plaintiff's administrative motion to

4   continue the hearing date to allow Defendants an opportunity to respond to Plaintiff's motion. *See*

5   ECF No. 77. Plaintiff filed a certificate of service for its motion for summary judgment as to both

6   Defendants on May 28, 2015. ECF No. 78. More than 40 days have passed since Plaintiff served

7   Defendants, and Defendants have failed to file any opposition to Plaintiff's motion.

8       On June 15, 2015, Plaintiff and Piña stipulated to the entry of a final judgment against

9   Piña, which the Court granted. ECF No. 82.

10      On June 19, 2015, Plaintiff filed a "notice of non-receipt of opposition to motion," ECF

11  No. 84, as Defendants had failed to file any opposition to the instant motion.

12      On June 22, 2015, Plaintiff voluntarily dismissed its claim for disgorgement and

13  prejudgment interest against APS Funding under Federal Rule of Civil Procedure 41(a)(1).

## II.  LEGAL STANDARD

15      Summary judgment is appropriate if, viewing the evidence and drawing all reasonable

16  inferences in the light most favorable to the nonmoving party, there are no genuine issues of

17  material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a);

18  *Celotex Corp. v. Catrett,* 477 U.S. 317, 321 (1986). At the summary judgment stage, the Court

19

20  [3] Plaintiff requests that the Court take notice of the verdicts and judgments against Defendants as well as the sentencing memoranda, jury instructions, exhibits, and transcripts from the criminal

21  cases. *See* ECF No. 67, ("RJN"). Plaintiff also requests judicial notice of the Securities and Exchange Commission's ("SEC") certifications regarding APS Funding, GCF Investment LLC,

22  and Greenlight Fund LLC's securities registration status. *See id.* The Court may take judicial notice of facts that are "not subject to reasonable dispute in that [they are] . . . (2) capable of

23  accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). The Court may properly take judicial notice of the court

24  records in the underlying criminal cases. *See United States v. Howard*, 381 F.3d 873, 876 n.1 (9th Cir. 2004) (record in underlying criminal case); *United States v. Wilson*, 631 F.2d 118, 119 (9th

25  Cir. 1980); *accord In re Korean Air Lines Co., Ltd.*, 642 F.3d 685, 689 n.1 (9th Cir. 2011).The Court may also take judicial notice of the SEC's attestations that a search of SEC records and files

26  do not reveal any registration documents related to this action. *See, e.g.*, *L'Garde, Inc. v. Raytheon Space & Airborne Sys.*, 805 F. Supp. 2d 932, 937–38 (C.D. Cal. 2011) (public records search).

27  The Court therefore GRANTS Plaintiff's request for judicial notice.

5

1  "does not assess credibility or weigh the evidence, but simply determines whether there is a

2  genuine factual issue for trial." *House v. Bell,* 547 U.S. 518, 559–60 (2006). A fact is "material" if

3  it "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.,*

4  477 U.S. 242, 248 (1986), and a dispute as to a material fact is "genuine" if there is sufficient

5  evidence for a reasonable trier of fact to decide in favor of the nonmoving party, *id.* "If the

6  evidence is merely colorable, or is not significantly probative, summary judgment may be

7  granted." *Id.*

8         The moving party bears the initial burden of identifying those portions of the pleadings,

9  discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*

10  *Corp.,* 477 U.S. at 323. Where the moving party will have the burden of proof on an issue at trial,

11  it must affirmatively demonstrate that no reasonable trier of fact could find other than for the

12  moving party, but on an issue for which the opposing party will have the burden of proof at trial,

13  the party moving for summary judgment need only point out "that there is an absence of evidence

14  to support the nonmoving party's case." *Id.* at 325; *accord Soremekun v. Thrifty Payless, Inc.,* 509

15  F.3d 978, 984 (9th Cir. 2007). Once the moving party meets its initial burden, the nonmoving

16  party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that

17  there is a genuine issue for trial." *Anderson,* 477 U.S. at 250.

18  **III.    DISCUSSION**

19         In the instant case, Plaintiff moves for summary judgment on two issues: (1) whether, in

20  light of Defendants' criminal convictions under Section 10(b) and Rule 10b-5, the doctrine of

21  collateral estoppel precludes Defendants from litigating their liability under Section 10(b), Rule

22  10b-5, and Section 17(a); and (2) whether Plaintiff is entitled to summary judgment on its claims

23  against Defendants for alleged violations of Section 5. *See* Mot. Plaintiff also requests the entry of

24  permanent injunctions under 15 U.S.C. §§ 77t(b), 78u(d), (e); disgorgement with interest; and civil

25  penalties pursuant to 15 U.S.C. §77t(d) and 15 U.S.C. § 78u(d). *See id.* The Court addresses each

26  argument below.

27

28  Case No.10-CV-04535-LHK
    ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
    JUDGMENT

United States District Court
Northern District of California

1

**A.  Summary Judgment on the Section 10(b), Rule 10b-5, and Section 17(a) claims**

2      Plaintiff moves for summary judgment on its Section 10(b), Rule 10b-5, and Section 17(a)

3   claims against Defendants. More specifically, Plaintiff argues that Defendants' criminal

4   convictions under Section 10(b) and Rule 10b-5 preclude Defendants from litigating their liability

5   under Section 10(b), Rule 10b-5, and Section 17(a) in the instant case.

6      The doctrine of offensive nonmutual collateral estoppel allows a non-party to a previous

7   action to prevent a defendant in a subsequent action "from relitigating the issues which [the]

8   defendant previously litigated and lost against another plaintiff." *Syverson v. Int'l Bus. Machines*

9   *Corp.*, 472 F.3d 1072, 1078 (9th Cir. 2007) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322

10  (1979)). The party seeking to invoke offensive nonmutual collateral estoppel must show that the

11  four factors established by the United States Supreme Court in *Parklane* are satisfied: (1) "there

12  was a full and fair opportunity to litigate the identical issue in the prior action"; (2) "the issue was

13  actually litigated in the prior action"; (3) "the issue was decided in a final judgment"; and (4) "the

14  party against whom issue preclusion is asserted was a party or in privity with a party to the prior

15  action." *See id.* at 1078. District courts are afforded "broad discretion" to determine when

16  offensive nonmutual collateral estoppel should be applied. *Collins v. D.R. Horton, Inc.*, 505 F.3d

17  874, 882 (9th Cir. 2007).

18      Moreover, it is well established that a criminal conviction may be used to establish issue

19  preclusion in a subsequent civil suit. *See Hinkle Nw., Inc. v. SEC*, 641 F.2d 1304, 1308 (9th Cir.

20  1981); *see also SEC v. Reyes*, No. C 06-04435 CRB, 2008 WL 3916247, at *2 (N.D. Cal. Aug. 25,

21  2008) ("[A] criminal conviction, whether by jury verdict or guilty plea, constitutes estoppel in

22  favor of the United States in a subsequent civil proceeding as to those matters determined by the

23  judgment in the criminal case.") (quoting *United States v. Podell*, 572 F.2d 31, 35 (2d Cir. 1978)).

24  However, "[s]uch estoppel extends only to questions 'distinctly put in issue and directly

25  determined' in the criminal prosecution." *Emich Motors Corp. v. Gen. Motors Corp.*, 340 U.S.

26  558, 569 (1951).

27

28  Case No.10-CV-04535-LHK
    ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
    JUDGMENT

United States District Court
Northern District of California

In the instant case, Plaintiff argues that Defendants' prior criminal convictions for securities fraud under Section 10(b) and Rule 10b-5 preclude Defendants from relitigating their liability under Section 10(b), Rule 10b-5, and Section 17(a). The Court first addresses the propriety of applying offensive nonmutual collateral estoppel with respect to Plaintiff's Section 10(b) and Rule 10b-5 claims, before turning to Plaintiff's Section 17(a) claims.

### 1. Section 10(b) and Rule 10b-5 Claims

As to Plaintiff's claims under Section 10(b) and Rule 10b-5, the Court finds the *Parklane* factors are satisfied for the reasons discussed below.

Defendants were indicted and convicted of committing securities fraud under Section 10(b) and Rule 10b-5 in their respective criminal trials. Swanson Am. Judgment at 2; Indictment at 1; Alexander Am. Judgment at 2. Defendants have not identified any defect in those criminal jury trials. More specifically, the juries in the criminal trials necessarily found that Defendants:

> [1] used a device or scheme to defraud someone, or [2] made an untrue statement of a material fact, or [3] failed to disclose a material fact that resulted in making the defendant's statements misleading, or [4] engaged in any act, practice, or course of business that operates or would operate as a fraud or deceit upon any person.

Alexander Final Jury Instructions, ECF No. 268, at 30 (10-CR-00730-LHK); Swanson Final Jury Instructions, ECF No. 183, at 33–34 (10-CR-00730-LHK). This instruction is a verbatim quotation of Rule 10b-5. *See* 17 C.F.R. § 240.10b-5. The juries also necessarily found that Defendants' "acts were or failure to disclose was in connection with the sale of investments into or shares [of the funds]'"; that Defendants "directly or indirectly used the mails in connection with these acts or failures to disclose"; and that Defendants acted "for the purpose of defrauding buyers or sellers of investments into or shares of the GCF LLC Fund or the Greenlight Fund." *Id.* As one court put it, Defendants' convictions for the "very offenses in [their] criminal prosecution has a binding estoppel effect against [Defendants] in the instant civil action." *SEC v. McCaskey*, No. 98 CIV. 6153, 2001 WL 1029053, at *3 (S.D.N.Y. Sept. 6, 2001).

While Defendants failed to oppose Plaintiff's motion for summary judgment, the Court

8

United States District Court
Northern District of California

independently concludes that the *Parklane* factors for applying nonmutual offensive collateral estoppel are satisfied here. Defendant Swanson had the benefit of a ten day jury trial, at the conclusion of which a jury convicted him of securities fraud under Section 10(b) and Rule 10b-5. *See* ECF Nos. 192, 193 (10-CR-00730-LHK). Defendant Alexander also had the benefit of a ten day jury trial, at the conclusion of which a jury convicted her of securities fraud under Section 10(b) and Rule 10b-5. *See* ECF Nos. 299, 300 (10-CR-00730-LHK). Consequently, there can be no dispute that "the issue was actually litigated in the prior action[,] . . . the issue was decided in a final judgment[,] . . . [and] the party against whom issue preclusion is asserted was a party . . . to the prior action." *Syverson*, 472 F.3d at 1078; *see also McCaskey*, 2001 WL 1029053, at *3–4 (criminal convictions under Section 10(b) and Rule 10b-5 estopped defendant from denying civil liability under same provisions). Defendants' criminal convictions for violating Section 10(b) and Rule 10b-5 therefore estop Defendants from denying liability as to Plaintiff's 10(b) and Rule 10b-5 claims in the instant action. *See, e.g.*, *Reyes*, 2008 WL 3916247, at *2 ("[A] criminal conviction, whether by jury verdict or guilty plea, constitutes estoppel in favor of the United States in a subsequent civil proceeding as to those matters determined by the judgment in the criminal case.").

In addition to the four *Parklane* factors, the Court must also determine whether there are any "indices of unfairness" or "potential shortcomings" in the underlying criminal proceedings that would weigh against applying offensive nonmutual collateral estoppel. *See Syverson*, 472 F.3d at 1078–79. Such indices include whether:

> (1) 'the plaintiff had the incentive to adopt a wait and see attitude in the hope that the first action by another plaintiff would result in a favorable judgment' which might then be used against the losing defendant; (2) the defendant had the incentive to defend the first suit with full vigor, especially when future suits are not foreseeable; (3) one or more judgments entered before the one invoked as preclusive are inconsistent with the latter or each other, suggesting that reliance on a single adverse judgment would be unfair; and, (4) the defendant might be afforded procedural opportunities in the later action that were unavailable in the first 'and that could readily cause a different result.'

9

*Id.* at 1079 (quoting *Parklane*, 439 U.S. at 330–31). Here, Plaintiff actively opposed staying the instant civil litigation during the pendency of Defendants' criminal proceedings; Defendants had every incentive to avoid the imposition of criminal liability; there is no risk of inconsistent judgments; and Defendants each had the procedural protections of full criminal jury trials. Accordingly, the Court concludes there are no indices of unfairness that would weigh against the application of collateral estoppel.

In sum, the Court finds that Defendants' criminal convictions for violations of Section 10(b) and Rule 10b-5 estop Defendants from denying liability in the instant civil action. As such, Plaintiff is entitled to judgment as a matter of law on its Section 10(b) and Rule 10b-5 claims. *See Emich*, 340 U.S. at 569 (1951); *see also United States v. Real Property*, 412 F. App'x 91 (9th Cir. 2011) (citing *Emich* and affirming summary judgment for government as a matter of law based on prior criminal judgment). Accordingly, the Court grants Plaintiff's motion for summary judgment against Defendants as to Plaintiff's Section 10(b) and Rule 10b-5 claims.

### 2. Section 17(a) Claims

In contrast to Defendants' convictions for violations of Section 10(b) and Rule 10b-5, Defendants were neither indicted nor convicted of violations of Section 17(a). For the reasons stated below, however, the Court finds that Plaintiff is also entitled to summary judgment on its Section 17(a) claims against Defendants.

As a general matter, Section 17(a), Section 10(b), and Rule 10b-5 "forbid making a material misstatement or omission in connection with the offer or sale of a security by means of interstate commerce." *SEC v. Dain Rauscher, Inc.*, 254 F.3d 852, 855–56 (9th Cir. 2001). Specifically, Section 17(a) provides:

> It shall be unlawful for any person in the offer or sale of any securities (including security-based swaps) or any security-based swap agreement (as defined in section 78c(a)(78) of this title) by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly
>
> (1) to employ any device, scheme, or artifice to defraud, or

10

(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

15 U.S.C. § 77q(a). As the Ninth Circuit has explained, to state a claim under Section 17(a) and Section 10(b)/Rule 10b-5, the SEC must therefore show that a defendant made: "(1) a material misstatement or omission (2) in connection with the offer or sale of a security (3) by means of interstate commerce." *SEC v. Phan,* 500 F.3d 895, 907–08 (9th Cir. 2007) (quoting *Dain Rauscher*, 254 F.3d at 856).

As discussed above, Defendants are collaterally estopped from denying liability under Section 17(a) if all four *Parklane* factors are satisfied: (1)"there was a full and fair opportunity to litigate the identical issue in the prior action"; (2) "the issue was actually litigated in the prior action"; (3) "the issue was decided in a final judgment"; and (4) "the party against whom issue preclusion is asserted was a party or in privity with a party to the prior action." *Syverson*, 472 F.3d at 1078. Despite Defendants' failure to oppose Plaintiff's motion for summary judgment, the Court addresses whether the issues litigated with respect to Defendants' violations of Section 10(b) and Rule 10b-5 are "identical" to Plaintiff's claims that Defendants violated Section 17(a)(1), (a)(2) and (a)(3). If the issues are "identical," then there can be no dispute as to the second, third, and fourth factors, as Defendants had full criminal jury trials where Defendants were convicted by their respective juries for violations of the securities laws.

To determine whether two issues are identical for purposes of collateral estoppel, the Court considers (1) whether there is "a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first"; (2) whether "the new evidence or argument involve[s] the application of the same rule of law as that involved in the prior proceeding"; (3) whether "pretrial preparation and discovery related to the matter presented in the first action [could] reasonably be expected to have embraced the matter sought to be presented in

11

1    the second"; and (4) "how closely related . . . the claims involved in the two proceedings [are]."

2    *Resolution Trust Corp. v. Keating*, 186 F.3d 1110, 1116 (9th Cir. 1999).

3         Defendants' convictions for violations of Section 10(b) and Rule 10b-5 required the

4    government to prove beyond a reasonable doubt that Defendants:

5              [1] used a device or scheme to defraud someone, or [2] made an
              untrue statement of a material fact, or [3] failed to disclose a
6              material fact that resulted in making the defendant's statements
              misleading, or [4] engaged in any act, practice, or course of business
7              that operates or would operate as a fraud or deceit upon any person.

8    *See* 17 C.F.R. § 240.10b-5; Alexander Final Jury Instructions, ECF No. 268, at 30 (10-CR-00730-

9    LHK); Swanson Final Jury Instructions, ECF No. 183, at 33–34 (10-CR-00730-LHK). In support

10   of its case, the government put forth evidence that Defendants used a Ponzi scheme purporting to

11   make "short-term, fixed interest rate loans secured by real estate" to defraud investors, diverted

12   investor funds to support their other businesses and for personal gain, misrepresented investor

13   returns through fraudulent mailings, and continued to solicit new investments while continuing to

14   misappropriate funds. *See* ECF No. 228, 139:10–140:12, 157:3–160:11 (10-CR-00730-LHK);

15   ECF No. 229, 41:14–44:7 (10-CR-00730-LHK); ECF No. 232, 93:4–95:14 (10-CR-00730-LHK);

16   Exhs. 138, 219(e), 219(h), 219(i).

17        As Plaintiff notes, these facts, on which the jury necessarily relied in finding that

18   Defendants violated Section 10(b) and Rule 10b-5, are the same underlying facts that would

19   support a finding of liability under Section 17(a). As the Ninth Circuit described it, Section 17(a),

20   Section 10(b), and Rule 10b-5 all "forbid making a material misstatement or omission in

21   connection with the offer or sale of a security by means of interstate commerce." *Dain Rauscher*,

22   254 F.3d at 855–56; *see also Phan*, 500 F.3d at 907–08 (citing same elements for Section 17(a),

23   Section 10(b), and Rule 10b-5 claims); *accord SEC v. Monarch Funding Grp.*, 192 F.3d 295, 308

24   (2d Cir. 1999) (noting "[e]ssentially the same elements are required under Section 17(a)(1)-(3) . . .

25   as under section 10(b) and Rule 10b-5").

26        There would therefore be "a substantial overlap between the evidence or argument" used to

27

28   Case No.10-CV-04535-LHK
     ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
     JUDGMENT

United States District Court
Northern District of California

12

United States District Court
Northern District of California

1    establish Defendants' criminal culpability under Section 10(b) and Rule 10b-5 and Defendants'

2    civil liability under Section 17(a). *See Resolution Trust Corp.*, 186 F.3d at 1116. In addition, as the

3    two statutes prohibit the same conduct, they "involve the application of the same rule of law" and

4    the "pretrial preparation and discovery" for the Section 10(b)/Rule 10b-5 claims would

5    "reasonably be expected to have embraced" the Section 17(a) claim. *Id.* Other courts addressing

6    instances where the SEC moved for summary judgment on Section 17(a) claims based on

7    convictions for violations of Section 10(b) and Rule 10b-5 have similarly concluded that collateral

8    estoppel is appropriate and granted summary judgment in the SEC's favor. *See, e.g.*, *McCaskey*,

9    2001 WL 1029053, at *4 (facts underlying Section 10(b) and Rule 10b-5 convictions "form[ed]

10   the basis for a Section 17(a) civil violation"); *see also SEC v. Monarch Funding Corp.*, No. 85 CV

11   7072, 1996 WL 348209, at *8 (S.D.N.Y. June 24, 1996) (same). For the purposes of collateral

12   estoppel, Plaintiff's Section 17(a) claim is thus "identical" to the adjudicated Section 10(b)/Rule

13   10b-5 claims.

14       The Court therefore concludes that the *Parklane* factors are satisfied with respect to

15   Plaintiff's Section 17(a) claim. For the reasons discussed above, the Court also concludes there is

16   no reason why application of offensive nonmutual collateral estoppel would be unfair to

17   Defendants. In addition, applying the doctrine to bar Defendants from relitigating the same

18   material facts that underlie Plaintiff's Section 10(b), Rule 10b-5, and Section 17(a) claims would

19   serve the purpose of the doctrine by "promoting judicial economy by preventing needless

20   litigation." *Parklane*, 439 U.S. at 326.

21       Accordingly, the Court grants Plaintiff's motion for summary judgment with respect to

22   Plaintiff's Section 17(a) claim.

23   **B.  Section 5 Claims**

24       Plaintiff further contends that it is entitled to summary judgment on its claims that

25   Defendants violated Section 5 of the Securities Act, which prohibits any person from selling

26   unregistered securities in interstate commerce unless those securities qualify for a registration

27

28   Case No.10-CV-04535-LHK
     ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
     JUDGMENT

13

1   exemption. *See* 15 U.S.C. § 77e(a), (c). As with Plaintiff's Section 10(b), Section 17(a), and Rule

2   10b-5 claims, Plaintiff relies on facts and issues litigated during Defendants' criminal trials to

3   support its motion for summary judgment. Plaintiff also relies on additional evidence it has

4   submitted in support of its motion for summary judgment.

5       "Sections 5(a) and (c) of the Securities Act, 15 U.S.C. § 77e(a), (c), make it unlawful to

6   offer or sell a security in interstate commerce if a registration statement has not been filed as to

7   that security, unless the transaction qualifies for an exemption from registration." *SEC v.*

8   *Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1085 (9th Cir. 2010). To establish a prima facie

9   case for violation of Section 5, Plaintiff must show (1) "the defendant directly or indirectly sold or

10  offered to sell securities"; (2) "no registration statement was in effect as to the securities"; and (3)

11  "the sale or offer was made through interstate commerce." *SEC v. CMKM Diamonds, Inc.*, 729

12  F.3d 1248, 1255 (9th Cir. 2013). The Court addresses each element in turn.

13      Under the first element, Plaintiff must show that "the defendant directly or indirectly sold

14  or offered to sell securities." *Id.* The terms "offer" and "sell" are defined as including "every

15  contract of sale or disposition of a security or interest in a security, for value. The term 'offer to

16  sell,' 'offer for sale,' or 'offer' shall include every attempt or offer to dispose of, or solicitation of

17  an offer to buy, a security or interest in a security, for value." 15 U.S.C. § 77b(3). In addition to

18  the "person who passes title to the security," other "participants" to the sale may also be held

19  liable under Section 5. *SEC v. Murphy*, 626 F.2d 633, 652 (9th Cir. 1980). A "participant" in the

20  sale may be liable under Section 5 if the defendant was "both a 'necessary participant' and

21  'substantial factor' in the sales transaction." *Phan*, 500 F.3d at 906.

22      Here, the Court finds that Plaintiff has shown that Defendants "directly or indirectly sold

23  or offered to sell securities" as required under Section 5, as Defendants were both "necessary

24  participant[s]" and "substantial factor[s]" in the sales transactions. First, Defendants' convictions

25  for violations of Section 10(b) and Rule 10b-5 required the government to prove that Defendants'

26  "acts were or failure to disclose was in connection with the sale of investments into or shares [of

27

28  Case No.10-CV-04535-LHK
    ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
    JUDGMENT

14

United States District Court
Northern District of California

the funds]." *See* Alexander Final Jury Instructions, ECF No. 268, at 30 (10-CR-00730-LHK); Swanson Final Jury Instructions, ECF No. 183, at 33–34 (10-CR-00730-LHK). In order to satisfy that element, the government introduced evidence that Defendant Alexander, the President of APS Funding, and Defendant Swanson, the Vice President of APS Funding, sold securities to individual investors. Individual investors testified about Defendants' communications and representations with respect to the terms of the sale of the securities as well as Defendants' active solicitation of individual buyers. *See, e.g.*, ECF No. 68, Exh. A at 12 (Alexander Trial Tr. 124:11–125:24); ECF No. 68 ("Swanson Trial Tr. 155:1–157:18). In sum, there can be no dispute that Defendants were responsible for personally selling securities to investors and, consequently, were both necessary participants and substantial factors in the sales transactions. *See, e.g.*, *SEC v. Loomis*, 969 F. Supp. 2d 1226, 1238 (E.D. Cal. 2013); *see also CMKM Diamonds*, 729 F.3d at 1255 (holding that "sellers . . . responsible for the distribution of unregistered securities" are liable under Section 5).

Under the second element, Plaintiff must show that "no registration statement was in effect as to the securities." *CMKM Diamonds*, 729 F.3d at 1255. As to the registration of the securities, the Court concludes that there can be no genuine material dispute that Defendants sold unregistered securities. Plaintiff has put forth evidence that the securities Defendants sold through A&P Funding, APS Funding, GCF Investment LLC, and Greenlight Funds were never registered with the SEC. *See* ECF No. 67, Exh. G. Moreover, the Private Placement Memoranda issued by GCF Investment, LLC explicitly provide on the face of the documents that "THESE SECURITIES HAVE NOT BEEN REGISTERED WITH THE SECURITIES AND EXCHANGE COMMISSION." *See* ECF No. 67-2 at 38.

As to the third element, Plaintiff must show that "the sale or offer was made through interstate commerce." *CMKM Diamonds*, 729 F.3d at 1255. With respect to the interstate commerce requirement, the Court finds that the government introduced evidence showing that Defendants used the mails in connection with the sale of securities and Defendants' fraudulent

Case No.10-CV-04535-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

scheme, as required to prove that Defendants violated Section 10(b) and Rule 10b-5. *See, e.g.*, ECF No. 67, Exh. B at 88. Moreover, it cannot be disputed that Defendants sold securities to investors outside of California, which would also satisfy the interstate commerce requirement. ECF No. 229 at 97:13–20 (10-CR-00730-LHK). Thus, Plaintiff has satisfied its burden as to the second and third elements of Plaintiff's Section 5 claims.

The Court therefore finds that Plaintiff has established prima facie Section 5 claims against Defendants Swanson and Alexander. As Plaintiff has made a prima facie showing, the burden of proof shifts to Defendants to show that the securities are entitled to a registration exemption. *See Murphy,* 626 F.2d at 641. As Defendants failed to file any opposition to the instant motion for summary judgment, Defendants have not identified any relevant exemption, and therefore cannot rely on a registration exemption. As a general matter, it is not the task of the district court to "scour the record in search of a genuine issue of triable fact. We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allen,* 91 F.3d 1275, 1279 (9th Cir. 1996).[4] Here, Defendants bear the burden of showing that a genuine issue of material fact exists as to the applicability of a registration exemption. Defendants have failed to do so.

Accordingly, the Court grants Plaintiff's motion for summary judgment on its Section 5 claims against Defendants.

### C. Injunctions from Further Violation of Securities Laws

Plaintiff also requests that the Court permanently enjoin Defendants from future violations of Section 10(b), Rule 10b-5, Section 17(a), and Section 5. For the reasons discussed below, the Court grants Plaintiff's request.

The SEC may bring an action in any district court of the United States to enjoin any person who it appears to the SEC "is engaged or about to engage in any acts or practices which constitute

---

[4] In any event, Defendants' failure to oppose Plaintiff's motion for summary judgment would constitute waiver with respect to any exemption argument. *See, e.g.*, *Freeman v. City of Seattle*, 18 F. App'x 519 (9th Cir. 2001).

Case No.10-CV-04535-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

or will constitute a violation of" the securities laws. 15 U.S.C. § 77t(b); *see also* 15 U.S.C.

§ 78u(d)(1). "[U]pon a proper showing, a permanent or temporary injunction or restraining order

shall be granted without bond." 15 U.S.C. § 77t(b); *see also* 15 U.S.C. § 78u(d)(1). "The granting

or denying of injunctive relief rests within the sound discretion of the trial court." *SEC v. Fehn,* 97

F.3d 1276, 1295 (9th Cir. 1996) (quotation marks omitted).

In *Fehn*, the court articulated the SEC's burden to obtain an injunction:

> To obtain a permanent injunction, the SEC ha[s] the burden of showing there [i]s a reasonable likelihood of future violations of the securities laws . . . . [T]here is no per se rule requiring the issuance of an injunction upon the showing of a past violation, but . . . the existence of past violations may give rise to an inference that there will be future violations; and the fact that the defendant is currently complying with the securities laws does not preclude an injunction.
>
> In predicting the likelihood of future violations, [the court] must assess the totality of the circumstances surrounding the defendant and his violations, and [the court] consider[s] such factors as (1) the degree of scienter involved; (2) the isolated or recurrent nature of the infraction; (3) the defendant's recognition of the wrongful nature of his conduct; (4) the likelihood, because of defendant's professional occupation, that future violations might occur; (5) and the sincerity of his assurances against future violations.

*Fehn*, 97 F.3d at 1295–96 (citations, quotation marks, and alteration marks omitted).

First, the Court considers the "degree of scienter involved" in Defendants' violations. *See id.* at 1295. To demonstrate "a reasonable likelihood that the wrong will be repeated . . . it will almost always be necessary for the Commission to demonstrate that the defendant's past sins have been the result of more than negligence." *Aaron v. SEC,* 446 U.S. 680, 703 (1980). In the instant case, scienter was found by the jury. *See* Alexander Verdict; Swanson Verdict; *Phan,* 500 F.3d at 908. More specifically, Defendants' respective juries found that Defendants acted "for the purpose of defrauding buyers or sellers of investments into or shares of the GCF LLC Fund or the Greenlight Fund." Alexander Final Jury Instructions, ECF No. 268, at 30; Swanson Final Jury Instructions, ECF No. 183, at 33–34. Thus, Defendants acted with at least deliberate recklessness. *See In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1053 (9th Cir. 2014). This factor weighs in favor of entering injunctions against Defendants.

Case No.10-CV-04535-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT

United States District Court
Northern District of California

1    Second, the Court considers whether Defendants' past violations were "isolated or

2    recurrent" in nature. *See Fehn*, 97 F.3d at 1295. As a threshold matter, "'first offenders' are not

3    immune from injunctive relief." *SEC v. Shapiro*, 494 F.2d 1301, 1308 (2d Cir. 1974); *accord SEC*

4    *v. Gowrish*, No. C 09-05883 SI, 2011 WL 2790482, at *5 (N.D. Cal. July 14, 2011), *aff'd*, 510 F.

5    App'x 588 (9th Cir. 2013). In the instant case, a jury found Defendants guilty of multiple counts

6    of mail and wire fraud, conspiracy to commit mail and wire fraud, and violations of securities laws

7    in a scheme that spanned nearly two years and impacted dozens of investors. *See* Alexander

8    Verdict; Alexander Am. Judgment; Swanson Verdict; Swanson Am. Judgment. Defendants'

9    violations were therefore "part of an ongoing pattern of conduct rather than isolated incidents."

10   *See SEC v. Jasper*, 883 F. Supp. 2d. 915, 929 (N.D. Cal. 2010). This factor weighs in favor of

11   entering injunctions against Defendants.

12   Third, the Court considers the degree to which Defendants have recognized the wrongful

13   nature of their conduct. *See Fehn*, 97 F.3d at 1295. "[L]ack of remorse" can be "apparent in" the

14   person's "continued insistence on the validity of his [or her]" conduct for which he or she has been

15   convicted. *See id.* at 1296. In the instant case, both Defendants have argued that they played a

16   minor role, were unaware of the fraud, had no fraudulent intent, and attempted to displace

17   culpability. Neither has ever "publicly acknowledged the wrongfulness" of their conduct. *Jasper*,

18   883 F. Supp. 2d. at 929; *see also* Swanson Sentencing Memo.; ECF No. 357 (10-CR-00730-

19   LHK), ("Alexander Sentencing Memo"); ECF No. 377, 48:8–50:21 (10-CR-00730-LHK); ECF

20   No. 419, 43:3–17, 50:18–23 (10-CR-00730-LHK). This factor weighs in favor of entering

21   injunctions.

22   Fourth, the Court considers the likelihood that future offenses might occur due to

23   Defendants' occupations. *See Fehn*, 97 F.3d at 1295–96. Although Defendants are in prison and

24   no longer work for APS Funding, they may enter the business world in the future. *See SEC v.*

25   *Small Bus. Capital Corp.*, No. 5:12-CV-03237-EJD, 2013 WL 5955669, at *2 (N.D. Cal. Nov. 6,

26   2013) (noting that the defendant "did not show that he would not re-enter the brokerage industry if

27

28   Case No.10-CV-04535-LHK
     ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
     JUDGMENT

18

United States District Court
Northern District of California

1  he were able"). The Court does note, however, that both Defendants are in their late sixties. This

2  factor therefore weighs only slightly in favor of entering injunctions.

3       Fifth, Defendants have provided no assurances against future violations. *See Fehn*, 97 F.3d

4  at 1295–96. This factor weighs in favor of entering injunctions against Defendants.

5       Based on the five *Fehn* factors, all of which weigh in favor of entering an injunction, the

6  Court finds a "reasonable likelihood" that defendant will violate the securities laws in the future.

7  Accordingly, the Court grants Plaintiff's request for permanent injunctions against Defendants, the

8  terms of which shall be set forth in the Court's final judgment.

9     **D.  Disgorgement and Prejudgment Interest**

10       Plaintiff also requests that the Court order disgorgement equal to the gross proceeds that

11  Defendants raised from investors during the duration of Defendants' participation in their

12  fraudulent scheme. The Court addresses this request below.

13       The Court has "broad equity powers to order the disgorgement of ill-gotten gains obtained

14  through the violation of the securities laws . . . . [T]he amount of disgorgement should include all

15  gains flowing from the illegal activities." *Platforms Wireless Int'l Corp.*, 617 F.3d at 1096

16  (citations and internal quotation marks omitted). Disgorgement need only be a "reasonable

17  approximation of profits causally connected to the violation." *Id.* (citation omitted). The SEC

18  bears the burden of persuasion that its disgorgement figure "reasonably approximates the amount

19  of unjust enrichment." *Id.* (citation omitted).  "Once the SEC establishes a reasonable

20  approximation of defendants' actual profits . . . the burden shifts to the defendants to 'demonstrate

21  that the disgorgement figure was not a reasonable approximation.'" *Id.* (citation omitted).

22       Here, Plaintiff contends that Defendants should be ordered to disgorge the total amount of

23  loss previously adjudicated against Defendants in their underlying criminal convictions.

24  According to Plaintiff, this amount represents the net total of investments contributed by victims

25  of Defendants' fraudulent scheme from January 2007 to December 2009. More specifically,

26  Plaintiff requests that the Court order that Defendant Alexander disgorge $6,305,684, which is the

27

28  Case No.10-CV-04535-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT

United States District Court
Northern District of California

1    total amount of loss from January 2007 through December 2009, ECF No. 379 (10-CR-00730-

2    LHK), and that Defendant Swanson disgorge $2,838,100, ECF No. 378 (10-CR-00730-LHK).

3    Defendant Swanson's lesser amount of loss calculation was based on Swanson's earliest-in-time

4    count of conviction of May 2008.

5         In support of its motion, Plaintiff offers evidence that Defendants took loans and

6    "management fee advances" from APS Funding. Swanson Transcript 1 at 159:7-160:5; ECF No.

7    323 at 94:5-95:7 (10-CR-00730-LHK). Plaintiff cites no other evidence with respect to

8    Defendants' use, control, or benefit from the total funds raised, including any evidence that may

9    have been submitted at Defendants' criminal trials. *See* Mot. at 15–16. While Plaintiff makes

10   cursory reference to the Court's findings with respect to the total loss amounts calculated in the

11   criminal cases, Plaintiff's single statement that Defendants "financed their personal and unrelated

12   business' expenses" is insufficient to establish that disgorgement of the total funds raised is

13   required as a matter of law. *See Celotex Corp.,* 477 U.S. at 325. While there is no dispute as to the

14   amount of total loss for which each Defendant is responsible, the Court finds that Plaintiff has

15   failed to carry its burden of showing that the total amount of loss is a "reasonable approximation

16   of defendants' actual profits," for disgorgement purposes. *See Platforms Wireless Int'l Corp.*, 617

17   F.3d at 1096; *see also SEC v. JT Wallenbrock & Assocs.*, 440 F.3d 1109, 1113–16 (9th Cir. 2006)

18   (ordering disgorgement of all funds where defendants controlled expenditures of the funds "at

19   their sole discretion"); *SEC v. Presto Telecomm., Inc.*, 237 F. App'x 198, 200 (9th Cir. 2007)

20   (affirming finding that "the SEC presented insufficient evidence to calculate the appropriate

21   amount of disgorgement").

22        Moreover, the Court notes that other courts have denied requests for disgorgement in

23   subsequent civil proceedings where disgorgement would be "redundant with the restitution [the

24   defendant] will be required to pay as a consequence of his [or her] criminal conviction." *SEC v.*

25   *Pace*, 173 F. Supp. 2d 30, 34 (D.D.C. 2001); *accord Commodity Futures Trading Comm'n v.*

26   *White Pine Trust Corp.*, No. 04CV2093 J (NLS), 2007 WL 1754819, at *9 (S.D. Cal. Apr. 20,

27

28   Case No.10-CV-04535-LHK
     ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
     JUDGMENT

1   2007). As Plaintiff seeks disgorgement of the very amount that Defendants have already been

2   ordered to pay in restitution to the actual victims of Defendants' wrongful conduct, the Court

3   concludes denial of Plaintiff's request would not allow Defendants to unjustly benefit from their

4   "ill-gotten gains." *JTWallenbrock*, 440 F.3d at 1113.

5        Accordingly, the Court denies Plaintiff's request for disgorgement. Plaintiff's request for

6   pre-judgment interest is therefore denied as moot.

7   **E. Civil Penalties**

8        Plaintiff requests that the Court impose "third tier" civil penalties against Defendants. As a

9   general matter, the Court may impose civil monetary penalties against any person who violates the

10  securities laws. *See* 15 U.S.C. §§ 77t(d), 78u(d)(3). Third tier penalties, the most severe of the

11  civil penalties, are available when the securities law violation "involved fraud, deceit,

12  manipulation, or deliberate or reckless disregard of a regulatory requirement [and] such violation

13  directly or indirectly resulted in substantial losses or created a significant risk of substantial loss to

14  other persons." 15 U.S.C. §§ 77t(d)(2)(C), 78u(d)(3)(B)(ii). The Court may impose penalties of up

15  to $150,000 per violation for a natural person, and up to $725,000 per violation for any other

16  person, 17 C.F.R. 201.1004 (2009); 17 C.F.R. 201, Subpt. E, Tbl. IV, or the "gross amount of

17  pecuniary gain" per violation. 15 U.S.C. § 78u(d)(3)(B)(iii). The objectives of civil penalties are to

18  both punish individual misconduct and deter future misconduct. *See SEC v. Mellert*, No. C03-

19  0519, 2006 WL 927743, at *1–2 (N.D. Cal. Mar. 29, 2006); *SEC v. Global Health*, No.

20  04CV1802, 2006 WL 4005575, at *3 (S.D. Cal. Dec. 11, 2006).

21       As an initial matter, the Court finds that Plaintiff has shown that third tier civil penalties

22  are appropriate. Defendants' respective juries found Defendants liable for violations involving

23  fraud and deliberate or reckless disregard of regulatory requirements. *See* Swanson Am. Judgment;

24  Alexander Am. Judgment; *Phan,* 500 F.3d at 908; *see also SEC v. Global Express Capital Real

25  Estate Inv. Fund, I, LLC*, 289 F. App'x 183, 189 (9th Cir. 2008) ("Because [defendant] committed

26  securities fraud, she satisfied the fraud requirement for third tier civil penalties."). Moreover,

27

28  Case No.10-CV-04535-LHK
    ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
    JUDGMENT

21

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Defendants' fraudulent actions resulted in a significant risk of substantial loss to dozens of

2   investors. *See* Swanson Am. Judgment (finding Defendant Swanson liable for $2,838,100.36 in

3   restitution to investors); Alexander Am. Judgment (finding Defendant Alexander liable for

4   $6,305,683.72 in restitution to investors). Thus, the Court finds that a "third tier" penalty is

5   appropriate in the instant case.

6          Plaintiff has requested that the Court "impose a substantial and meaningful penalty," but

7   does not request a specific penalty amount. Mot. at 18. The penalty decision is within the Court's

8   discretion. *See SEC v. Pattison*, No. C–08–4238 EMC, 2011 WL 723600, at *5 (N.D. Cal. Feb.

9   23, 2011), *aff'd*, 495 Fed. App'x 786 (9th Cir. 2012). Like a permanent injunction, civil penalties

10  are imposed to deter the wrongdoer from similar violations in the future. Therefore, the Court

11  considers the *Fehn* factors as set forth in Section III.C. *See SEC v. Wilde,* No. SACV 11–0315

12  DOC(AJWx), 2012 WL 6621747, at *16 (C.D. Cal. Dec. 17, 2012) (considering the *Fehn* factors

13  when determining the amount of civil penalties); *SEC v. Abacus Int'l Holding Corp.*, No. C 99-

14  02191, 2001 WL 940913, at *5 (N.D. Cal. Aug. 16, 2001) (considering the factors used to

15  determine whether to impose a permanent injunction in determining civil penalties).

16         The Court does not have a reasonable estimation of the "gross amount of pecuniary gain"

17  on which to base a penalty because Plaintiff has failed to satisfy its burden to reasonably

18  approximate Defendants' profits. *See supra*. The Court does have, however, the number of counts

19  of conviction for securities fraud for each Defendant. Here, Defendant Alexander was convicted of

20  two counts of securities fraud, *see* Alexander Am. Judgment, and Defendant Swanson was

21  convicted of one count of securities fraud, *see* Swanson Am. Judgment. Under 15 U.S.C.

22  § 78u(d)(3), the Court may impose penalties of up to $150,000 per violation for a natural person.

23  *See, e.g.*, *Wilde*, 2012 WL 6621747, at *16; *see also SEC v. CMKM Diamonds, Inc.*, 635 F. Supp.

24  2d 1185, 1192 (D. Nev. 2009) (discussing per violation and gross pecuniary gain calculations).

25  Keeping in mind the magnitude of Defendants' criminal restitution obligations, the *Fehn* factors,

26  and the deterrence and punishment objectives of civil penalties under § 78u(d)(3), the Court

27

28  Case No.10-CV-04535-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT

1   imposes two $150,000 penalties on Defendant Alexander and one $150,000 penalty on Defendant

2   Swanson. *Cf. Loomis*, 17 F. Supp. 3d at 1032–33. These civil monetary penalties underscore the

3   seriousness of Defendants' wrongful conduct while recognizing the magnitude of the restitution

4   amounts that Defendants owe to the victims of Defendants' conduct.

5        Accordingly, the Court orders civil penalties in the amount of $300,000 for Defendant

6   Alexander and $150,000 for Defendant Swanson.

7   **IV. CONCLUSION**

8        For the reasons stated above, the Court GRANTS in part and DENIES in part Plaintiff's

9   motion for summary judgment.

10       The Court orders as follows:

11       1.  Plaintiff's motion for summary judgment with respect to the Section 10(b), Rule 10b-5,

12           Section 17(a), and Section 5 claims is GRANTED.

13       2.  Plaintiff's request for permanent injunction is GRANTED.

14       3.  Plaintiff's request for disgorgement and prejudgment interest is DENIED.

15       4.  Plaintiff's request for civil penalties is GRANTED.

16   **IT IS SO ORDERED.**

17   Dated: July 17, 2015

18   _____
     LUCY H. KOH

19   United States District Judge

20

21

22

23

24

25

26

27                                          23

United States District Court
Northern District of California